ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**11/23/2020** at 02:37:04 PM

Clerk of the Superior Court
By Cecile Van Pelt, Deputy Clerk

1  CARL E. DOUGLAS, ESQ. (SBN: 097011)
   JAMON R. HICKS, ESQ. (SBN: 232747)
2  AJA M. MANN, ESQ.  (SBN: 244221)
   BIANCA V. PEREZ, ESQ. (SBN: 327590)
3  *DOUGLAS / HICKS LAW, APC*
   5120 W. Goldleaf Circle, Suite 140
4  Los Angeles, California 90056
5  Phone: (323) 655-6505
   Fax: (323) 927-1941
6  Email: carl@douglashickslaw.com

7  Attorneys for Plaintiffs,
8  ESTATE OF ORAL W. NUNIS, SR., by
   and through, ROXIE A. NUNIS, Individually,
9  and as Successor In Interest to the ESTATE, and
   NAOMI NUNIS, Individually,
10 and WILLIE MAE KIRKLAND as Guardian
   *ad Litem* for ABIGAIL TABITHA NUNIS and
11 JABEZ CALEB NUNIS

12

13

14         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15             **FOR THE COUNTY OF SAN DIEGO**

16 ESTATE OF ORAL W. NUNIS, SR. by and        Case No.:  37-2020-00043271-CU-CR-CTL
   Through, ROXIE A. NUNIS, Individually,
17 and as Successor In Interest to the ESTATE,   **COMPLAINT FOR DAMAGES**
18 NAOMI NUNIS, Individually, and WILLIE
   MAE KIRKLAND as Guardian *ad Litem* for   1. Civil Rights Violations (Civil Code §§
19 ABIGAIL TABITHA NUNIS and JABEZ              51.7, 52.1(b), and 52.1(h));
   CALEB NUNIS                               2. Assault and Battery - *Cal. Govt. Code* §
20                                              820;
21          *Plaintiffs*,                     3. False Imprisonment - *Cal. Govt. Code* §
        v.                                       820; and
22                                            4. Negligence *Cal. Govt. Code* § 820.
23 CITY OF CHULA VISTA, and DOES 1
   through 40, inclusive,                     **DEMAND FOR JURY TRIAL**
24
25          *Defendant*s.

26

27

28

                                     1
                    COMPLAINT FOR DAMAGES

# I.

## INTRODUCTORY ALLEGATIONS

1.      At all relevant times mentioned here, Plaintiff ROXIE A. NUNIS (" ROXIE" or "Mrs. NUNIS") is a resident of the CITY of Manteca, San Luis Obispo County, CA.  Mrs. NUNIS is the Successor In Interest to the ESTATE of ORAL W. NUNIS, SR. (the "ESTATE"). She is the legally married wife of ORAL W. NUNIS, SR. ("ORAL" or "Mr. NUNIS"), and as such is duly authorized to bring this action individually and on the ESTATE's behalf.  They were married on September 13, 1994.

2.      At all relevant times mentioned here, Plaintiff NAOMI NUNIS ("NAOMI") is a resident the CITY of Manteca, San Luis Obispo County, CA.  NAOMI is Mr. NUINS' natural daughter.

3.      At all relevant times mentioned here, Plaintiff WILLIE MAE KIRKLAND ("Mrs. KIRKLAND") is a resident the CITY of Manteca, San Luis Obispo County, CA.  Mrs. KIRKLAND is the duly appointed Guardian *ad Litem* for ABIGAIL TABITHA NUNIS ("ABIGAIL") born May 16, 2003 and JABEZ CALEB NUNIS ("JABEZ"), born July 13, 2012, and bears this action in her representative capacity. ABIGAIL and JABEZ are Mr. NUNIS' natural children.

4.      At all relevant times mentioned here, Defendants CITY OF CHULA VISTA (the "CITY") is a governmental public entity, and/or political subdivision within the State of California, duly organized and existing under the laws of the State of California.

5.      Plaintiffs are unaware of the true names and/or capacities of those individuals or businesses sued here as DOES 1 through 40, and therefore sues these Defendants using their fictitious names.  Plaintiffs will amend this Complaint to allege each DOE'S true name and capacity when that information becomes known.  Plaintiffs are informed and believe that each of these fictitiously named Defendants is legally responsible in some manner for the wrongful, intentional, and/or negligent actions and inactions alleged here, whether by reason of their own actions and/or inactions, or as a result of the conduct of their agents, employees, joint venturers

2

and/or co-conspirators, and that the injuries and damages alleged in this Complaint were legally caused by these actions and inactions.

6.     At all relevant times mentioned here, each of the Defendants DOES 1 through 40 is an agent, employee, servant, and/or co-conspirator of the CITY, the Chula Vista Police Department, and each of the Defendants DOES 1 through 40, and in doing the things alleged here, is acting within the course and scope of that agency, employment, service, and/or conspiracy, and with the consent of each of their co-Defendants.

7.     On or about May 8, 2020, Plaintiffs filed a timely Claim for Damages against the CITY for actions and failures to act arising out of Mr. NUNIS' death, pursuant to *Government Code* § 910 *et seq*. That Claim was rejected by operation of law. Accordingly, this Complaint for Damages is timely filed.

## II.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.     This lawsuit concerns the outrageous, careless, and unlawful use of deadly force by CITY officers, as well as their malicious effort to distort the true facts of their own misconduct. In addition, this case raises questions concerning the proper use of the "wrap" the latest in a line of law enforcement weaponry that directly lead to Mr. NUNIS. Death.

9.     On or about March 13, 2020, at about 12:08 a.m., in or near the 1300 block of Camino Carmelo in Chula Vista, California, ORAL WESLEY NUNIS, Sr. ("Mr. NUNIS") is approached by unknown police officers employed by the CITY of Chula Vista who decide to detain him even though Mr. NUNIS' daughter had dialed 911 because her daughter felt her father was then in need of mental health attention.

10.     When they first come upon Mr. NUNIS, it is clear, or through the exercise of reasonable skill, training and experience should be clear, that Mr. NUNIS is then suffering from some mental disease or mental illness crisis. Mr. NUNIS is reportedly acting out of character, trying to injure himself, and is giving the distinct impression that there is something going on

3

COMPLAINT FOR DAMAGES

with him which is highly abnormal. Defendants 1 through 30 have no reason to believe that Mr. NUNIS is armed, dangerous, or creating a serious threat to anyone's physical safety. Mr. NUNIS is a small framed man standing on 5'4" tall, and weighing no more than 147 pounds. Each of the Defendants was bigger, stronger, and more powerful than him. Thus, none of the Defendants who arrived on scene were intimidated in any way by Mr. NUNIS' physical presence.

11.    Rather than making efforts to contact a member of San Diego County's psychological evaluation team, Defendants DOES 1 through 30 negligently, carelessly, and recklessly investigate Mr. NUNIS' presence in his daughter's home and conclude that they need to handcuff him. They negligently made the decision to handcuff him, though he had broken no law, nor committed no crime to justify this manner of detention.  In addition, the Plaintiffs are informed and believe that others who are then present at the apartment plead with the Defendants against handcuffing Mr. NUNIS, explaining that he suffers from claustrophobia, or some other emotional condition, so, restricting his hands with cuffs would likely cause him to react negatively.

12.    Despite this warning from his family, Defendants 1 through 30 negligently, careless, recklessly, and maliciously threaten to hit, grab and detain Mr. NUNIS, and do in fact hit, grab, and restrict his body movements with handcuffs and a body wrapping device. As they are doing so, Mr. NUNIS' family and friends plead with the Defendants against using force.

13.    The CITY and DOES 31 through 40 failed to properly train each of the Defendants 1 through 30 based on standards taught in California's Peace Officers Standards and Training program on evaluating  citizens suffering from mental health problems; as well as alternative ways of escorting citizens to metal health evaluations, who were then in the midst of some mental disease or mental health crisis, rather than by using unreasonable force.

14.    Alternatively, each of the involved police officers failed to properly implement the training they had received from the CITY and DOES 31 through 40 concerning evaluating and then detaining citizens who were then in the midst of some mental disease or mental health crisis, rather than by using unreasonable force.

COMPLAINT FOR DAMAGES

15.    The Plaintiffs also allege that each of the Defendants DOES 1 through 30 negligently, carelessly, and mistakenly concluded that Mr. NUNIS posed a threat to their safety, and then negligently, carelessly, and mistakenly deployed handcuffs and a wrapping device designed to restrict a subject's movement. The Plaintiffs are informed and believe the use of that wrapping device was a substantial factor legally causing Mr. NUNIS' death.

16.    Alternatively, each of the Defendants DOES 1 through 30 who were present at that day and time negligently, carelessly, and mistakenly attempted to detain Mr. NUNIS by pushing his small-framed body against the asphalt using their collective body weight. As Mr. NUNIS struggled to regain his breath, the Defendants mistakenly interpreted Mr. NUNIS' struggles to regain his breath as acts of resistance, shouting "Stop resisting, stop resisting." The collective weight of the Defendants DOES 1 through 30 on Mr. NUNIS' chest and upper body was a substantial factor causing his heart to begin beating frantically as Mr. NUNIS struggled to breath. The Defendants' collective weight pressing on Mr. NUNIS' body was a substantial factor causing his death.

17.    The Plaintiffs also contend that the CITY negligently trained these Defendants DOES 1 through 30 as to the appropriate circumstances and techniques to deploy when using force, including body wraps, leading to the actions and failures to act as alleged here. The actions and inactions described here are unfortunately part of the long-standing custom, habit, and practice of members of Chula Vista's Police Department to use unreasonable force, including using this body wrapping device to detained unarmed citizens, in an unreasonable, unsafe, and/or excessive manner.

18.    Mr. NUNIS did not consent to this use of unreasonable force. He did nothing to justify this use of serious and unreasonable force against him.  He was unarmed when the Defendants detained him, was not suspected of any crime, and had not posed any reasonable threat of serious bodily injury to any other person, so as to justify this use of unreasonable force against him.  He was not suspected of having committed any crime or violence against any person. The Defendants DOES 1 through 30 far outnumbered him, and were bigger, stronger better

COMPLAINT FOR DAMAGES

trained and equipped to escort him to a mental health facility, or detain and handcuff him safely without using unreasonable force, or deploying the body wrap.

19.     Mr. NUNIS was an African American male. None of the Defendants who assaulted, battered, and detained him was African American. The Plaintiffs are informed and believe that because of implicit bias, each of the Defendants DOES 1 through 30 assumed Mr. NUNIS presented a serious threat to someone's safety, and then assaulted, battered and detained him. Consequently, the Plaintiffs are informed and believe that Mr. NUNIS had not posed any objectively reasonable threat to anyone, but was hit, struck and aggressively detained on account of his African American race. Accordingly, each Defendants DOES 1 through 30's use of unreasonable force under these circumstances was calculated, intentional, excessive, unlawful, malicious, oppressive, and/or with a deliberate indifference to Mr. NUNIS 's rights and safety, justifying the imposition of punitive damages against the individual Defendants, all in an amount to be determined according to proof at trial.

20.     The Plaintiffs are informed and believe that Mr. NUNIS did not die immediately after being assaulted battered, and detained by the Defendants DOES 1 through 30. Instead, he was alive for several minutes after Defendants handcuffed him, and was not pronounced dead by treating emergency room doctors until after he was transported to a local hospital and had suffered excruciating pain and injury. Accordingly, as the Successor in Interest to her husband's Estate, Mrs. NUNIS seeks recovery for survival and economic damages which her husband suffered, all in an amount to be determined according to proof at trial.

21.     The Plaintiffs are informed and believe that after he had been detained, it was clear, or through the exercise of reasonable diligence should have been clear, that Mr. NUNIS was then in immediate need of medical attention. Nevertheless, each of the Defendants DOES 1 through 30 at the scene of the interaction negligently, wrongfully, intentionally, and/or with a deliberate indifference to Mr. NUNIS' rights and safety, failed to immediately summon medical assistance to the scene to attend to his injuries. This delay in seeking medical assistance

COMPLAINT FOR DAMAGES

demonstrated a conscious and/or reckless disregard for Mr. NUNIS' medical condition, and was a substantial factor leading to his death.

22.     The Plaintiffs are further informed and believe that each of the Defendants DOES 1 through 30  has conspired, and continues to conspire to hide and distort the true facts concerning this incident. This conspiracy is furthered by each of the Defendants DOES 1 through 30 described above, preparing false and misleading reports, as well as providing false and misleading statements concerning the true nature of their interaction with Mr. NUNIS, the circumstances leading up to his being assaulted, battered, and detained, and their delay in summoning medical assistance to treat Mr. NUNIS's injuries.

23.     As a legal consequence of the actions and failures to act of Defendants CITY, and DOES 1 through 40's as described here, ROXIE NUNIS has suffered severe, emotional, and financial pain, injury, and damages resulting from the loss of her husband's love, comfort, companionship, society, care, assistance, protection, and financial and moral support all in an amount to be determined according to proof at trial.

24.     As a legal consequence of the actions and failures to act of Defendants CITY, and DOES 1 through 40's as described here, NAOMI, ABIGAIL TABITHA NUNIS, and JABEZ CALEB NUNIS has each suffered severe, emotional, and financial pain, injury, and damages resulting from the loss of their father's love, comfort, companionship, society, care, assistance, protection, and financial and moral support further in an amount to be determined according to proof at trial.

25.     As a further legal result of each of the Defendants DOES 1 through 40's conduct, each of the Plaintiffs has been required to employ and did employ medical doctors, psychologists and psychiatrists to examine, treat and care for them.  Consequently, each of the Plaintiffs has incurred medical costs for past medical bills and expenses, and expects to incur similar medical costs and expenses in the future, all in an amount to be determined according to proof at trial.

COMPLAINT FOR DAMAGES

26. As a further legal result of each of the Defendants DOES 1 through 40's conduct, Mrs. NUNIS has incurred funeral and burial expenses, all in an amount to be determined according to proof at trial.

27. As a further legal result of each of the Defendants DOES 1 through 40's conduct, the ESTATE has sustained significant economic injuries and damages, all in an amount to be determined according to proof at trial.

### III.
### FIRST CAUSE OF ACTION
**ESTATE OF ORAL W. NUNIS, by
and through, ROXIE A. NUNIS, Individually,
and as Successor in Interest to the ESTATE, and
NAOMI NUNIS, Individually, WILLIE MAE KIRKLAND as
GUARDIAN AD LITEM for ABIGAIL TABITHA NUNIS and JABEZ CALEB NUNIS
Against the CITY of CHULA VISTA and DOES 1 through 40 for
CIVIL RIGHTS VIOLATIONS,
(*CIVIL CODE* §§ 51.7, 52.1(b) and 52.1(h))**

28. Plaintiffs incorporate by reference the allegation contained in paragraphs 1 through 27 above, as if fully set forth here.

29. On or about March 13, 2020, at the time and place described above, each of the Defendants CITY, and DOES 1 through 40 interfered with Mr. NUNIS' exercise and enjoyment of rights guaranteed him by *Civil Code* §§51.7, 52.1(b), and 52.1 (h) and *California Constitution*, Article I, § 7 and 31, including the right to equal protection under the laws of California and the right to be free from unlawful force and violence from the Defendants DOES 1 through 30. Specifically, each of these Defendants CITY, and DOES 1 through 30 discriminated against Mr. NUNIS because of his race, and interfered with Mr. NUNIS' rights to be free from any threats of violence, and/or acts of violence, or intimidation.

30. Plaintiffs are informed and believe that at all times mentioned here, Defendants CITY, and DOES 1 through 30 subjected Mr. NUNIS to racial discrimination by initially targeting him for these civil rights violations because of his African American race, and then exerting unreasonable force against him, also because of his race.

8

31.     As a legal result of these acts, omissions, customs, practices, policies and decisions of each of the Defendants CITY, and DOES 1 through 40, Mr. NUNIS was killed, and his civil rights were violated when the Defendants DOES 1 through 30 assaulted, battered, and suffocated him on account of his race.  Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants DOES 1 through 30 intended to cause Mr. NUNIS' serious physical injury and acted with a malicious, willful and conscious disregard for their rights as secured by *Civil Code* § 52.1 and the California Constitution.

32.     As a legal result of Defendants CITY, and DOES 1 through 40's actions and inactions as described here, ROXIE, NAOMI, ABIGAIL, and JABEZ  has each  suffered severe, emotional, and financial pain, injury, and damages resulting from the loss of ORAL's love, comfort, companionship, society, care, assistance, protection, and financial and moral support, all in an amount to be determined according to proof at trial.

33.     As a further legal result of each of the Defendants DOES 1 through 40's conduct, ROXIE, NAOMI, ABIGAIL, and JABEZ has each been required to employ and did employ medical doctors, psychologists and psychiatrists to examine, treat and care for them. Consequently, each has incurred medical costs for past medical bills and expenses, and expects to incur similar medical costs and expenses in the future, all in an amount to be determined according to proof at trial.

34.     As a further legal result of each of the Defendants DOES 1 through 40's conduct, Mrs. NUNIS has incurred funeral and burial expenses, all in an amount to be determined according to proof at trial.

35.     Mr. NUNIS did not consent to this use of force.  He did nothing to justify this use of serious and unreasonable force against him.  He was unarmed when Defendant DOES 1 through 30 attempted to detain him, and had not posed any reasonable threat of death, or serious bodily injury to any other person, so as to justify this use of unreasonable force against him. The Defendants DOES 1 through 30 knew nothing about him, other than that Mr. NUNIS was suffering from some mental condition, and was in need of help from mental health experts. There

was no allegation that Mr. NUNIS was armed or had engaged in any seriously violent conduct for the Defendants to reasonably fear for their safety when they chose to aggressively handle him. The Defendants far outnumbered him, and were better trained and equipped to detain and question him without using unreasonable force.  Consequently, the Defendants DOES 1 through 30's unreasonable use under these circumstances was intentional, malicious, oppressive, and despicable, and/or with a deliberate indifference to Mr. NUNIS' rights and safety, justifying the imposition of punitive damages against the individual Defendants DOES 1 through 30, all in an amount to be determined according to proof at trial.

36.     Each of the Plaintiffs is entitled to and demands trial costs, attorney fees, and litigation expenses incurred prosecuting this action, all in an amount to be determined according to proof at trial pursuant to *Civil Code* §§ 52.1(b) and 52.1(h).

37.     As a further legal result of this civil rights violation, Plaintiffs seek, in addition to the other damages stated here, the statutory civil penalty of $25,000.00 per wrongdoer pursuant to *Civil Code* § 52(b)(2).


**IV.**
**SECOND CAUSE OF ACTION**
**ESTATE OF ORAL W. NUNIS, by**
**and through, ROXIE A. NUNIS, Individually,**
**and as Successor in Interest to the ESTATE, and**
**NAOMI NUNIS, Individually, WILLIE MAE KIRKLAND as**
**GUARDIAN AD LITEM for ABIGAIL TABITHA NUNIS and JABEZ CALEB NUNIS**
**Against the CITY of CHULA VISTA and DOES 1 through 40 for**
**ASSAULT and BATTERY (*Cal. Govt. Code* § 820)**

38.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 37 above as if fully set forth here.

39.     Plaintiffs are informed and believe that on or about March 13, 2020, at the time and place described above, each of the Defendants DOES 1 through 30, with the knowledge, permission and consent of Defendants CITY and DOES 31 through 40, threatened hit, kick, and wrap Mr. NUNIS's body, and did in fact hit, wrap, and kill Mr. NUNIS as described above,

though Mr. NUNIS did not pose a reasonable threat of bodily injury to anyone. In addition, each of the Defendants DOES 1 through 30 used more force against Mr. NUNIS than was reasonable. As such, the conduct of each of the Defendants use of force under the circumstances was wrongful, unreasonable, and unlawful.

40.    As a legal result of Defendants CITY, and DOES 1 through 40's actions and inactions as described here, ROXIE, NAOMI, ABIGAIL, and JABEZ has each suffered severe, emotional, and financial pain, injury, and damages resulting from the loss of ORAL's love, comfort, companionship, society, care, assistance, protection, and financial and moral support, all in an amount to be determined according to proof at trial.

41.    As a further legal result of each of the Defendants DOES 1 through 40's conduct, ROXIE, NAOMI, ABIGAIL, and JABEZ has each been required to employ and did employ medical doctors, psychologists and psychiatrists to examine, treat and care for them. Consequently, each has incurred medical costs for past medical bills and expenses, and expects to incur similar medical costs and expenses in the future, all in an amount to be determined according to proof at trial.

42.    As a further legal result of each of the Defendants DOES 1 through 40's conduct, Mrs. NUNIS has incurred funeral and burial expenses, all in an amount to be determined according to proof at trial.

43.    Mr. NUNIS did not consent to this use of force. He did nothing to justify this use of serious and unreasonable force against him. He was unarmed when Defendant DOES 1 through 30 attempted to detain him, and had not posed any reasonable threat of death, or serious bodily injury to any other person, so as to justify this use of unreasonable force against him. The Defendants DOES 1 through 30 knew nothing about him, other than that Mr. NUNIS was suffering from some mental condition, and was in need of help from mental health experts. There was no allegation that Mr. NUNIS was armed or had engaged in any seriously violent conduct for the Defendants to reasonably fear for their safety when they chose to aggressively handle him. The Defendants far outnumbered him, and were better trained and equipped to detain and question him without using unreasonable force. Consequently, the Defendants

COMPLAINT FOR DAMAGES

DOES 1 through 30's unreasonable use of force under these circumstances was intentional, malicious, oppressive, and despicable, and/or with a deliberate indifference to Mr. NUNIS's rights and safety, justifying the imposition of punitive damages against the individual Defendants DOES 1 through 30, all in an amount to be determined according to proof at trial.

V.

**THIRD CAUSE OF ACTION**
**ESTATE OF ORAL W. NUNIS, by**
**and through, ROXIE A. NUNIS, Individually,**
**and as Successor in Interest to the ESTATE, and**
**NAOMI NUNIS, Individually, WILLIE MAE KIRKLAND as**
**GUARDIAN AD LITEM for ABIGAIL TABITHA NUNIS and JABEZ CALEB NUNIS**
**Against the CITY of CHULA VISTA and DOES 1 through 40 for**

**FALSE IMPRISONMENT (*Cal. Govt. Code* § 820)**

44.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 43 above as if fully set forth here.

45.     On or about March 13, 2020, at the time and placed described above, each of the Defendants CITY, and DOES 1 through 40 intentionally deprived Mr. NUNIS of his freedom of movement by force and threats of force and violence. This confinement lasted for some appreciable time. Mr. NUNIS did not voluntarily consent to this restriction on his movement and this false imprisonment.

46.     As a legal result of this false imprisonment, Mr. NUNIS died. As a further legal result of this false imprisonment and Mr. NUNIS's death, ROXIE, NAOMI, ABIGAIL, and JABEZ has each suffered severe, emotional, and financial pain, injury, and damages resulting from the loss of ORAL's love, comfort, companionship, society, care, assistance, protection, and financial and moral support, all in an amount to be determined according to proof at trial.

47.     As a further legal result of each of the Defendants DOES 1 through 40's conduct, ROXIE, NAOMI, ABIGAIL, and JABEZ has each been required to employ and did employ medical doctors, psychologists and psychiatrists to examine, treat and care for them. Consequently, each has incurred medical costs for past medical bills and expenses, and expects

12

COMPLAINT FOR DAMAGES

to incur similar medical costs and expenses in the future, all in an amount to be determined according to proof at trial.

48.     As a further legal result of each of the Defendants DOES 1 through 40's conduct, Mrs. NUNIS has incurred funeral and burial expenses, all in an amount to be determined according to proof at trial.

49.     Mr. NUNIS did not consent to this false imprisonment. He did nothing to justify this use of serious and unreasonable force against him. He was unarmed when Defendant DOES 1 through 30 attempted to imprison him, and had not posed any reasonable threat of death, or serious bodily injury to any other person, so as to justify this use of unreasonable force against him. The Defendants DOES 1 through 30 knew nothing about him, other than that Mr. NUNIS was suffering from some mental condition, and was in need of help from mental health experts. There was no allegation that Mr. NUNIS was armed or had engaged in any seriously violent conduct for the Defendants to reasonably fear for their safety when they chose to aggressively confront him.   The Defendants far outnumbered him, and were better trained and equipped to detain and question him without using deadly force.  Consequently, the Defendants DOES 1 through 30's unreasonable use of force under these circumstances was intentional,  malicious, oppressive, and despicable, and/or with a deliberate indifference to Mr. NUNIS's rights and safety, justifying the imposition of punitive damages against the individual Defendants DOES 1 through 30, all in an amount to be determined according to proof at trial.

///

///

///

///

///

///

///

///

COMPLAINT FOR DAMAGES

## VI.

### FOURTH CAUSE OF ACTION
**ESTATE OF ORAL W. NUNIS, by
and through, ROXIE A. NUNIS, Individually,
and as Successor in Interest to the ESTATE, and
NAOMI NUNIS, Individually, WILLIE MAE KIRKLAND as
GUARDIAN AD LITEM for ABIGAIL TABITHA NUNIS and JABEZ CALEB NUNIS
Against the CITY of CHULA VISTA and DOES 1 through 40 for
NEGLIGENCE (*Cal. Govt. Code* § 820)**

50.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 49 above as if fully set forth here.

51.     On or before March 13, 2020, each of the Defendants CITY, and DOES 1 through 40 owed Mr. NUNIS a duty to be free to seek mental health assistance by calling the CITY's Police Department, without responding officers inflicting using excessive, unreasonable, or unlawful force on him.

52.     On or about March 13 2020, each of these Defendants CITY, and DOES 1 through 40 violated that duty of care in the negligent, careless, unintentional and reckless manner with which they interacted with Mr. NUNIS, including, but not limited to:

   a.   The CITY and DOES 31 through 40's negligent hiring and supervision of DOES 1 through 30, although it was clear, or through the exercise of reasonable diligence should have been clear that each of the Defendants who was present that night was a dangerous and unsafe police officer, who was prone to using unreasonable force, and recklessly violated the rights and safety of citizens who were then suffering symptoms of a mental health crisis.

   b.   The negligent investigation into Mr. NUNIS' presence at his daughter's home, and the subsequent negligent decision to use restrictive devices and techniques against him; and/or

   c.   The negligent and careless training the CITY and DOES 31 through 40 provided DOES 1 through 30 concerning the proper way of interacting with citizens in need of mental health assistance, which was inconsistent with best police practices, as well as the state-mandated policies and procedures as reflected in the Peace Officers Standards and Training ("POST") program; and/or

14

COMPLAINT FOR DAMAGES

d. Defendants DOES 1 through 30's negligent, careless, and unintentional failure to follow the training the Defendants CITY and DOES 31 through 40 provided them concerning interacting with citizens who may be suffering from a mental health crisis; and/or

e. Defendants DOES 1 through 30's failure to properly assess the need to handcuff, imprison, and/or deploy a wrap device against Mr. NUNIS, given Mr. NUNIS' small frame, and his stated fear of handcuffs; and/or

f. Defendants DOES 1 through 30's negligent, careless, and unintentional deployment of their wrap device; and/or

g. The negligent failure develop a tactical coordinated plan to escort Mr. NUNIS to a mental health facility, though Defendants had Mr. NUNIS outnumbered; and/or

h. The negligent, careless, and reckless manner in which Defendants attempted to detain Mr. NUNIS without giving due consideration to his small size and weight, as compared to the much larger sized Defendants

i. The failure to assess the need to provide Mr. NUNIS prompt medical care, after it was clear he was then in immediate need of medical attention; and/or

j. The negligent handling of evidence and witnesses during the course of the investigation following the death.

53.     As a direct and legal result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, As a legal result of Defendants CITY, and DOES 1 through 40's actions and inactions as described here, ROXIE, NAOMI, ABIGAIL, and JABEZ   has each suffered severe, emotional, and financial pain, injury, and damages resulting from the loss of ORAL's love, comfort, companionship, society, care, assistance, protection, and financial and moral support, all in an amount to be determined according to proof at trial.

54.     As a further legal result of each of the Defendants DOES 1 through 40's conduct, each of the Plaintiffs has been required to employ and did employ medical doctors, psychologists and psychiatrists to examine, treat and care for them.  Consequently, each has incurred medical costs for past medical bills and expenses, and expects to incur similar medical costs and   in the future, all in an amount to be determined according to proof at trial.

55.     As a further legal result of each of the Defendants DOES 1 through 40's conduct,

ROXIE and NAOMI NUNIS has each been required to employ and did employ medical doctors, psychologists and psychiatrists to examine, treat and care for them. Consequently, each has incurred medical costs for past medical bills and expenses, and expects to incur similar medical costs and expenses in the future, all in an amount to be determined according to proof at trial.

56.     As a further legal result of each of the Defendants DOES 1 through 40's conduct, Mrs. NUNIS has incurred funeral and burial expenses, all in an amount to be determined according to proof at trial.

**WHEREFORE,** Plaintiffs pray for Judgment as follows:

### FOR THE FIRST CAUSE OF ACTION

1.     For general damages in an amount determined according to proof at trial;

2.     For past and future medical expenses in an amount to be determined according to proof at trial;

3.     For funeral and burial expenses in an amount to be determined according to proof at trial;

4.     For punitive damages against each of the Defendants pursuant to Civil Code § 52(b)(1);

5.     For attorney fees, costs, and expenses in an amount to be determined according to proof at trial pursuant to Civil Code § 52(a), (b)(3); and

6.     For a statutory civil penalty of $25,000.00 for each violation of law pursuant to Civil Code § 52(b)(2).

### FOR THE SECOND CAUSE OF ACTION

1. For general damages in an amount determined according to proof at trial;

2. For past and future medical expenses in an amount to be determined according to proof at trial;

16

3. For funeral and burial expenses in an amount to be determined according to proof at trial; and

4. For punitive damages against each of the individual Defendants pursuant to Civil Code § 52(b)(1).

## FOR THE THIRD CAUSE OF ACTION

1. For general damages in an amount determined according to proof at trial;

2. For past and future medical expenses in an amount to be determined according to proof at trial;

3. For funeral and burial expenses in an amount to be determined according to proof at trial; and

4. For punitive damages against each of the individual Defendants pursuant to Civil Code § 52(b)(1).

## FOR THE FOURTH CAUSE OF ACTION

1. For general damages in an amount determined according to proof at trial;

2. For past and future medical expenses in an amount to be determined according to proof at trial; and

3. For funeral and burial expenses in an amount to be determined according to proof at trial.

## FOR ALL CAUSES OF ACTION

1. For costs of the suit incurred here; and

2. For such other and further relief as this Court may deem just and proper.

DATED: November 18, 2020                    Respectfully submitted,

*DOUGLAS / HICKS LAW, APC*

By: _____

Carl E. Douglas
Jamon R. Hicks
Aja M. Mann
Bianca V. Perez
**Attorneys for Plaintiffs,**
ESTATE OF ORAL W. NUNIS, SR., by
and through, ROXIE A. NUNIS,
Individually, and as Successor In Interest to
the ESTATE, and NAOMI NUNIS,
Individually, and WILLIE MAE
KIRKLAND as Guardian *ad Litem* for
ABIGAIL TABITHA NUNIS and JABEZ
CALEB NUNIS

18

COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED: November 18, 2020                    Respectfully submitted,

                                            *DOUGLAS / HICKS LAW, APC*


                                            By: _____

                                            Carl E. Douglas
                                            Jamon R. Hicks
                                            Aja M. Mann
                                            Bianca V. Perez
                                            **Attorneys for Plaintiffs,**
                                            ESTATE OF ORAL W. NUNIS, SR., by
                                            and through, ROXIE A. NUNIS,
                                            Individually, and as Successor In Interest to
                                            the ESTATE, and NAOMI NUNIS,
                                            Individually, and WILLIE MAE
                                            KIRKLAND as Guardian *ad Litem* for
                                            ABIGAIL TABITHA NUNIS and JABEZ
                                            CALEB NUNIS

19