# EXHIBIT 7

```
 1                  UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   ESTATE OF ORAL W. NUNIS, SR.,   )
     by and through ROXIE A. NUNIS,  )
 5   Individually, and As Successor  )
     in Interest to the Estate,      )
 6   NAOMI NUNIS, Individually, and  )
     WILLIE MAE KIRKLAND, as         )
 7   Guardian ad Litem for A.T.N.    )
     and J.C.N.,                     )
 8                                   )
                   Plaintiffs,       )
 9                                   )
        v.                           ) Case No.: 3:21-
10                                   ) cv-1627-AJB-DEB
     CITY OF CHULA VISTA; DAVID      )
11   ARCE, BRIAN OLSEN, DAVID        )
     KREMER, EVAN LINNEY, DAVID      )
12   Rivers, MANUEL PADILLA, JORDAN  )
     SALVADOR, KENNETH HICKS and     )
13   DOES 1 through 40, inclusive,   )
                                     )
14                 Defendants.       )
                                     )
15   _____)

16

17
               VIDEOTAPED DEPOSITION OF EVAN LINNEY
18
                  655 West Broadway, Suite 1700
19
                      San Diego, California
20
                   Wednesday, April 20, 2022
21

22

23

24   Reported by:   Tamara L. Espino
                    CSR No. 9494
25   Job No.:       255685
```

1

```
 1   BY MR. DOUGLAS:                                            01:47:19
 2       Q    Do you remember reading a document filed on       01:47:19
 3   behalf of Mr. Nunis's wife?                                01:47:21
 4            MR. SAIN:  Discovery phase relevance.             01:47:29
 5            THE WITNESS:  My understanding is that            01:47:31
 6   originally there were two lawsuits, including one where   01:47:33
 7   Mr. Nunis's wife was being represented by one of you.     01:47:37
 8   I'm not sure which one.  I do recall reading that in the  01:47:40
 9   lawsuit documents.                                         01:47:44
10   BY MR. DOUGLAS:                                            01:47:44
11       Q    When you got out of your car on March 13th of     01:47:46
12   2020, your intention was to investigate a potential       01:47:49
13   suicide caller -- call.  True?                             01:47:55
14       A    When I arrived on scene at the Camino Carmelo    01:48:02
15   residence, my intention was to deal with a mental health 01:48:06
16   crisis.                                                    01:48:10
17       Q    Did you intend, as you got out of your car,      01:48:10
18   to arrest Mr. Nunis or just to assess?  Or something      01:48:13
19   else?                                                      01:48:17
20            MR. SAIN:  Asked and answered repeatedly.         01:48:17
21            THE WITNESS:  My intention was to get             01:48:20
22   Mr. Nunis the mental health help he needed.               01:48:22
23   BY MR. DOUGLAS:                                            01:48:22
24       Q    Even if that meant taking him to the             01:48:25
25   hospital?                                                  01:48:27
```

159

```
 1        A    When we take somebody into protective custody      01:48:29
 2   pursuant to 5150 of the Welfare and Institutions Code,        01:48:33
 3   we do transport them to a hospital facility for mental        01:48:36
 4   health treatment.                                             01:48:36
 5        Q    Did you interpret your conduct as performing        01:48:40
 6   a 5150 assessment to take him into the hospital because       01:48:42
 7   he was a danger to himself or others?                         01:48:46
 8        A    When I first made contact with Mr. Nunis, I         01:48:51
 9   attempted to restrain him to make sure the scene was          01:48:54
10   safe so we could begin evaluating his mental health           01:48:58
11   needs and get him the appropriate treatment.                  01:49:02
12        Q    Mr. Nunis told you that he did not want to be       01:49:04
13   handcuffed.  True?                                            01:49:08
14        A    Mr. Nunis did say that.                             01:49:10
15        Q    Okay.  You heard those words?                       01:49:13
16             MR. SAIN:  Asked and answered.                      01:49:15
17             THE WITNESS:  Yes.                                  01:49:16
18   BY MR. DOUGLAS:                                               01:49:17
19        Q    Okay.  Did you -- did he sound lucid when he        01:49:18
20   said those words to you?                                      01:49:21
21             MR. SAIN:  Discovery phase relevance.               01:49:23
22             THE WITNESS:  I don't know.                         01:49:29
23   BY MR. DOUGLAS:                                               01:49:29
24        Q    Okay.  You don't remember if you thought he         01:49:30
25   was lucid when you heard those words spoken two years         01:49:33
```

160

| | | |
|---|---|---|
| 1 | I'm talking about the time you first came in contact | 02:58:48 |
| 2 | with Mr. Nunis at the top of the stairwell and you | 02:58:51 |
| 3 | presented him with handcuffs, that you didn't have any | 02:58:54 |
| 4 | information that I guess proved to you that he was | 02:58:57 |
| 5 | intoxicated, did you? | 02:59:07 |
| 6 | A     I did not have any information to indicate | 02:59:11 |
| 7 | that he might be intoxicated. | 02:59:15 |
| 8 | Q     But you did have information that suggested | 02:59:17 |
| 9 | he might be in the midst of a mental health crisis, yes? | 02:59:19 |
| 10 | MR. SAIN:  Vague as to time. | 02:59:23 |
| 11 | THE WITNESS:  The information I'd received | 02:59:25 |
| 12 | from dispatch was that Mr. Nunis was actively being | 02:59:26 |
| 13 | restrained by a family member while trying to jump out | 02:59:29 |
| 14 | of a second-story window. | 02:59:32 |
| 15 | BY MR. LACY: | 02:59:34 |
| 16 | Q     Does that mean that you had information that | 02:59:34 |
| 17 | suggested he was having a mental health crisis? | 02:59:36 |
| 18 | A     That to me, along with -- I should have put | 02:59:39 |
| 19 | this in the previous answer -- the information regarding | 02:59:43 |
| 20 | him going to the hospital previously, that did lead me | 02:59:46 |
| 21 | to believe he was experiencing a mental health crisis. | 02:59:50 |
| 22 | Q     Okay.  And so as you said earlier, you were | 02:59:53 |
| 23 | then going to conduct a 5150 evaluation, right? | 02:59:56 |
| 24 | A     Based on the information I had regarding his | 03:00:02 |
| 25 | aggressive and erratic behavior while we were | 03:00:05 |

219

| | | |
|---|---|---|
| 1 | responding, my first priority was to secure the scene to | 03:00:08 |
| 2 | make sure everyone was safe, and then evaluate | 03:00:12 |
| 3 | Mr. Nunis's mental needs for a 5150 evaluation. | 03:00:16 |
| 4 |     Q    Okay.  So you were going to do a 5150 | 03:00:19 |
| 5 | evaluation, yes? | 03:00:22 |
| 6 |     A    That was my initial plan. | 03:00:23 |
| 7 |     Q    And is it -- I guess I'm trying to | 03:00:25 |
| 8 | understand.  You're saying that you couldn't do the 5150 | 03:00:28 |
| 9 | evaluation until you first had Mr. Nunis restrained in | 03:00:31 |
| 10 | some type of way; is that right? | 03:00:35 |
| 11 |     A    Based on the information I had, that he had | 03:00:40 |
| 12 | been in a physical struggle while trying to jump out of | 03:00:44 |
| 13 | a window, the situation was tense and rapidly evolving. | 03:00:48 |
| 14 | I needed to ensure the safety of everyone, including | 03:00:52 |
| 15 | Mr. Nunis.  And getting him handcuffed was the quickest | 03:00:55 |
| 16 | way to do that. | 03:00:58 |
| 17 |     Q    So I guess my question was a little more | 03:00:59 |
| 18 | pointed than that.  Okay?  And what I'm trying to find | 03:01:03 |
| 19 | out was, because of your evaluation, did that mean that | 03:01:06 |
| 20 | before you could go on with your 5150 evaluation, as you | 03:01:11 |
| 21 | had been trained, that you first believed that you | 03:01:15 |
| 22 | needed to put him in handcuffs, right? | 03:01:17 |
| 23 |         MR. SAIN:  Misstates prior testimony in part. | 03:01:20 |
| 24 | BY MR. LACY: | 03:01:25 |
| 25 |     Q    I mean, if I'm wrong, just tell me how I'm | 03:01:25 |

```
 1   wrong.                                                   03:01:27
 2        A    My first priority when responding was to       03:01:29
 3   secure the scene by getting Mr. Nunis in handcuffs to    03:01:32
 4   ensure or improve his safety and the safety of everyone  03:01:35
 5   present before evaluating his mental health needs.       03:01:39
 6        Q    Okay.  And you needed -- you had to do that    03:01:42
 7   before you could evaluate his mental health needs,       03:01:45
 8   right?                                                   03:01:48
 9        A    Based on the information that he had just      03:01:50
10   been in a physical struggle trying to jump out of a      03:01:53
11   window, I was concerned that his behavior might escalate 03:01:56
12   again and I was trying to prevent an additional struggle 03:01:59
13   or an additional attempt to jump out of the window.      03:02:01
14        Q    Okay.  Did you ask him his name?               03:02:05
15        A    I don't recall asking him his name.            03:02:09
16        Q    Did you ask him how he was feeling?            03:02:11
17        A    I don't recall asking him how he was feeling.  03:02:14
18        Q    Did you ask him if he knew where he was?       03:02:17
19        A    I don't recall asking him if he knew where he  03:02:21
20   was.                                                     03:02:24
21        Q    Did you introduce yourself to him, "Hi, I'm    03:02:24
22   Officer Linney"?                                         03:02:27
23        A    I did not do that.                             03:02:29
24        Q    Did you tell him that you weren't there to     03:02:30
25   hurt him?                                                03:02:33
```

221

REPORTER'S CERTIFICATION

I, Tamara L. Espino, Certified Shorthand Reporter in and for the State of California, do hereby certify:

That the foregoing witness was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were reported stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, I have subscribed my name on this date:

_____

Tamara L. Espino, CSR No. 9494

247

```
 1                    UNITED STATES DISTRICT COURT

 2                   SOUTHERN DISTRICT OF CALIFORNIA

 3

 4    ESTATE OF ORAL W. NUNIS, SR.,   )
      by and through ROXIE A. NUNIS,  )
 5    Individually, and As Successor  )
      in Interest to the Estate,      )
 6    NAOMI NUNIS, Individually, and  )
      WILLIE MAE KIRKLAND, as         )
 7    Guardian ad Litem for A.T.N.    )
      and J.C.N.,                     )
 8                                    )
                   Plaintiffs,        )
 9                                    )
         v.                           ) Case No.: 3:21-
10                                    ) cv-1627-AJB-DEB
      CITY OF CHULA VISTA; DAVID      )
11    ARCE, BRIAN OLSEN, DAVID        )
      KREMER, EVAN LINNEY, DAVID      )
12    RIVERS, MANUEL PADILLA, JORDAN  )
      SALVADOR, KENNETH HICKS and     )
13    DOES 1 through 40, inclusive,   )
                                      )
14                 Defendants.        )
                                      )
15    _____ )

16

17
             VIDEOTAPED DEPOSITION OF MANUEL PADILLA
18
                  655 West Broadway, Suite 1700
19
                      San Diego, California
20
                    Wednesday, May 4, 2022
21

22

23

24    Reported by:    Tamara L. Espino
                      CSR No. 9494
25    Job No.:        255686
```

                                                                           1

```
 1              MR. SAIN:  Relevance.  You can answer.        10:30:46
 2              THE WITNESS:  I can't recall, but I believe   10:30:48
 3    it was in 2021.                                         10:30:56
 4    BY MR. DOUGLAS:                                         10:30:57
 5         Q    Prior to your touching Mr. Nunis on           10:30:58
 6    March 13th of 2020, had you been informed that Mr. Nunis 10:31:01
 7    had kicked any person?                                  10:31:05
 8         A    No.                                           10:31:11
 9         Q    We were talking about the calls that Mr. --   10:31:12
10    Agent Linney made prior to your arrival at the scene of 10:31:17
11    the detention.  What's the next call that -- what's the 10:31:21
12    second call that you can remember him making?           10:31:26
13         A    That he was out with the reporting party,    10:31:32
14    with the RP.                                            10:31:37
15         Q    What's the next call you remember him making 10:31:40
16    prior to your arrival?                                  10:31:44
17         A    From what I can recall, that he had an       10:31:46
18    uncooperative subject refusing to go into handcuffs.    10:31:54
19         Q    What's the next call you can remember him    10:32:00
20    making after that call?                                 10:32:03
21         A    That the subject was fighting and running    10:32:10
22    towards the door.                                       10:32:13
23         Q    At that point were you of the opinion that   10:32:16
24    the suspect had now committed a crime?  Just upon       10:32:20
25    hearing that he was fighting and running away?          10:32:26
```

34

| | | |
|---|---|---|
| 1 |     A    I thought there was a potential for a crime, | 10:32:33 |
| 2 | yes. | 10:32:37 |
| 3 |     Q    Your understanding initially was that this | 10:32:37 |
| 4 | was a mental health call, true? | 10:32:41 |
| 5 |     A    Yes. | 10:32:43 |
| 6 |     Q    And are you trained to respond to mental | 10:32:46 |
| 7 | health calls via your code three, lights and siren? | 10:32:50 |
| 8 |     A    Yes. | 10:32:57 |
| 9 |     Q    That is part of your training that, every | 10:32:58 |
| 10 | mental health call, you're supposed to respond with | 10:33:00 |
| 11 | lights and siren? | 10:33:03 |
| 12 |     MR. SAIN:  Misstates prior testimony. | 10:33:04 |
| 13 |     THE WITNESS:  No.  We are trained to respond | 10:33:09 |
| 14 | to a mental crisis call when it calls for a code three | 10:33:11 |
| 15 | emergency response.  Not all mental crisis calls require | 10:33:17 |
| 16 | an emergency response call. | 10:33:22 |
| 17 | BY MR. DOUGLAS: | 10:33:25 |
| 18 |     Q    Based on your training, your practice, and | 10:33:25 |
| 19 | your experience, what would be the circumstances when a | 10:33:27 |
| 20 | mental health call would necessitate a code three | 10:33:30 |
| 21 | response? | 10:33:34 |
| 22 |     A    From my experience and my training, whenever | 10:33:36 |
| 23 | there is a great safety risk to the subjects or people | 10:33:43 |
| 24 | around the subject. | 10:33:49 |
| 25 |     Q    Are you trained, based on your understanding | 10:33:50 |

35

```
 1                    REPORTER'S CERTIFICATION

 2

 3              I, Tamara L. Espino, Certified Shorthand

 4    Reporter in and for the State of California, do hereby

 5    certify:

 6

 7              That the foregoing witness was by me duly

 8    sworn; that the deposition was then taken before me at

 9    the time and place herein set forth; that the testimony

10    and proceedings were reported stenographically by me and

11    later transcribed into typewriting under my direction;

12    that the foregoing is a true record of the testimony and

13    proceedings taken at that time.

14

15              IN WITNESS WHEREOF, I have subscribed my name

16    on this date:

17

18

19

20                         _____

21                         Tamara L. Espino, CSR No. 9494

22

23

24

25
                                                              189
```

```
                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA



ESTATE OF ORAL W. NUNIS, SR.     ) No: 3:21-cv-1627-AJB-DEB
by and through, ROXIE A. NUNIS,  )
individually and as successor    )
in interest to the ESTATE, et al.)
                                 )
       Plaintiffs,               )
vs.                              )
                                 )
CITY OF CHULA VISTA, et al.      )
                                 )
       Defendants.               )
_____)
                                 )
KIMONE NUNIS, individually and   )
as Successor-in-Interest to      )
Decedant Oral Nunis; ORAL W.     )
NUNIS, as Successor-in-Interest  )
to Decedant Oral Nunis; ANDRE    )
NUNIS, as Successor-in-Interest  )
to Decedant Oral Nunis, and      )
LUDECEA NUNIS, as Successor-in-  )
Interest to Decedent Oral Nunis, )
                                 )
       Plaintiffs,               )
                                 )
vs.                              )
                                 )
CITY OF CHULA VISTA, et al.      )
                                 )
       Defendants.               )
_____)

                     DEPOSITION OF BRIAN OLSON

                    WEDNESDAY, JUNE 29, 2022

                      SAN DIEGO, CALIFORNIA


Reported By: Gidgette Nieves, CSR No. 10142
```

Case 3:21-cv-01627-TWR-DEB   Document 85-11   Filed 02/24/23   PageID.3751   Page 14 of 19

Brian Olson
Estate of Oral W. Nunis, Sr. vs. City of Chula Vista

```
11:30:26   1        Q    Okay.  What was your understanding of what
11:30:28   2   the call for service involved, beyond that there was
11:30:33   3   a man jumping out or subject attempting to jump out
11:30:37   4   of a second-story window and was being restrained by
11:30:40   5   family members?
11:30:41   6        A    My understanding of the call was of a male
11:30:44   7   was attempting to jump out of a second-story window
11:30:47   8   and was being actively restrained by family members.
11:30:51   9        Q    Okay.  And based on -- what did that mean
11:30:53  10   to you as an officer?
11:30:56  11        A    As an officer this was a priority call for
11:31:00  12   me, and that it was probably going to be a 5150 type
11:31:04  13   mental evaluation.
11:31:06  14        Q    Okay.  As you are in route to the
11:31:27  15   location, was there any other information provided
11:31:29  16   to you by transmission, whether it's like radio or
11:31:34  17   officer updates?
11:31:36  18        A    Officer updates.
11:31:37  19        Q    Okay.  And what were those?
11:31:40  20        A    I remember Agent Linney getting on that he
11:31:43  21   was making contact and that the subject was
11:31:49  22   uncooperative and refusing to go into handcuffs.
11:32:18  23        Q    What did that mean to you, if he was
11:32:21  24   refusing to go into handcuffs?
11:32:23  25        A    It meant that he was noncompliant to
```

Case 3:21-cv-01627-TWR-DEB   Document 85-11   Filed 02/24/23   PageID.3752   Page 15 of 19

Brian Olson
Estate of Oral W. Nunis, Sr. vs. City of Chula Vista

1211493

```
14:28:04   1   BY MS. QUESADA:
14:28:04   2        Q    Is that a crime to jump out a window?
14:28:08   3        A    My understanding is the 5150 would be the
14:28:11   4   nature of the call, not a crime.
14:28:13   5        Q    Okay.  When you were on scene, did you
14:28:23   6   ever perform a 5150 evaluation?
14:28:29   7        A    When I arrived on scene I was not
14:28:31   8   performing -- we were in the process of performing
14:28:35   9   the 5150 evaluation, which would include the first
14:28:40  10   step would be securing the subject to make sure he's
14:28:43  11   not a danger to himself or others in the scene.
14:28:47  12   Second step in that process would be to evaluate his
14:28:50  13   mental health needs, to see if what we have to
14:28:53  14   evaluate on.  And then the third step would be to
14:28:56  15   obtain the help that he needs.
14:28:58  16        Q    Okay.  So as the event or incident is
14:29:01  17   going on the circumstances change, correct?
14:29:06  18             MR. SAIN:  Vague as to time.
14:29:08  19   BY MS. QUESADA:
14:29:08  20        Q    Just in general, the circumstances could
14:29:10  21   change where you need to reassess based on how
14:29:14  22   things unfold?
14:29:17  23             MR. SAIN:  Still vague.
14:29:18  24   BY MS. QUESADA:
14:29:18  25        Q    Whether the -- the -- the scene is secure,
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3       I, the undersigned Certified Shorthand Reporter

 4   holding a valid and current license issued by the State

 5   of California, do hereby certify:

 6       That said proceedings were taken down by me in

 7    shorthand at the time and place therein set forth and

 8    thereafter transcribed under my direction and

 9    supervision.

10       I further certify that I am neither counsel for nor

11   related to any party to said action nor in any way

12   interested in the outcome thereof.

13       Before completion of the deposition, review of the

14    transcript [ x]was [ ]was not requested.

15       The dismantling, unsealing, or unbinding of the

16   original transcript will render the Reporter's

17   certificate null and void.

18       IN WITNESS WHEREOF, I have this date, July 27, 2022,

19   subscribed my name          [signature: Gidgette Nieves]

20

21                           _____
                             GIDGETTE NIEVES
22                           CSR NO. 10142

23

24

25
```

```
                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA



ESTATE OF ORAL W. NUNIS, SR.     ) No: 3:21-cv-1627-AJB-DEB
by and through, ROXIE A. NUNIS,  )
individually and as successor    )
in interest to the ESTATE, et al.)
                                 )
     Plaintiffs,                 )
vs.                              )
                                 )
CITY OF CHULA VISTA, et al.      )
                                 )
     Defendants.                 )
_____)
                                 )
KIMONE NUNIS, individually and   )
as Successor-in-Interest to      )
Decedant Oral Nunis; ORAL W.     )
NUNIS, as Successor-in-Interest  )
to Decedant Oral Nunis; ANDRE    )
NUNIS, as Successor-in-Interest  )
to Decedant Oral Nunis, and      )
LUDECEA NUNIS, as Successor-in-  )
Interest to Decedent Oral Nunis, )
                                 )
     Plaintiffs,                 )
                                 )
vs.                              )
                                 )
CITY OF CHULA VISTA, et al.      )
                                 )
     Defendants.                 )
_____)

                    DEPOSITION OF DAVID RIVERS

                      THURSDAY, JUNE 30, 2022

                       SAN DIEGO, CALIFORNIA


Reported By: Gidgette Nieves, CSR No. 10142
```

Case 3:21-cv-01627-TWR-DEB   Document 85-11   Filed 02/24/23   PageID.3755   Page 18 of 19

David Rivers
Estate of Oral W. Nunis, Sr. vs. City of Chula Vista

1211494

```
11:20:28   1    the patrol division, working the graveyard shift.
11:20:34   2         Q    And at some point you received a call for
11:20:39   3    service regarding Mr. Nunis, correct?
11:20:41   4         A    I did not receive the call for service.
11:20:44   5    Agent Linney and Officer Padilla received that call.
11:20:47   6    When they received that call I was currently on
11:20:49   7    another call with Officer Kremer.
11:20:52   8         Q    And what -- how were you first notified of
11:20:57   9    this call for service with Mr. Nunis?
11:21:00  10         A    I heard the call being aired over the
11:21:03  11    police radio.
11:21:04  12         Q    And what did you hear?
11:21:06  13              MR. SAIN:  Vague as to time.
11:21:09  14              THE WITNESS:  At the time that I heard the
11:21:11  15    transmission come over the radio that Agent Linney
11:21:14  16    and Officer Padilla were dispatched to a possible
11:21:18  17    person in mental crisis.
11:21:21  18    BY MS. ANDREWS:
11:21:21  19         Q    Is that also called a 5150 call?
11:21:25  20         A    If could be either a 5150 or a suicidal
11:21:30  21    person.
11:21:32  22         Q    Is there a difference in how you would
11:21:34  23    respond to a 5150 call versus a suicidal call?
11:21:39  24         A    No.
11:21:44  25         Q    And at the time that the first
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3        I, the undersigned Certified Shorthand Reporter

 4   holding a valid and current license issued by the State

 5   of California, do hereby certify:

 6        That said proceedings were taken down by me in

 7    shorthand at the time and place therein set forth and

 8    thereafter transcribed under my direction and

 9    supervision.

10        I further certify that I am neither counsel for nor

11   related to any party to said action nor in any way

12   interested in the outcome thereof.

13        Before completion of the deposition, review of the

14    transcript [ x]was [ ]was not requested.

15        The dismantling, unsealing, or unbinding of the

16   original transcript will render the Reporter's

17   certificate null and void.

18        IN WITNESS WHEREOF, I have this date, July 28, 2022,

19   subscribed my name

20                             [signature]

21                            _____
                              GIDGETTE NIEVES
22                            CSR NO. 10142

23

24

25
```

223